

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                 Case No. 12-CR-59 (JPS)

HUGO GONZALEZ,

        Defendant.

## AMENDED PLEA AGREEMENT

1.     The United States of America, by its attorneys, James L. Santelle, United States Attorney for the Eastern District of Wisconsin, and Brian J. Resler, Assistant United States Attorney, and the defendant, Hugo Gonzalez, individually and by attorney Roberto R. Ledesma, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.     The defendant has been charged in a one-count information, which alleges a violation of Title 18, United States Code, Section 2423(b).

3.     The defendant has read and fully understands the charge contained in the information. He fully understands the nature and elements of the crime with which he has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.     The defendant voluntarily agrees to waive prosecution by indictment in open court.

5.     The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES:**

On or about December 28, 2011, in the State and Eastern District of Wisconsin, and the State and Northern District of Illinois,

**HUGO GONZALEZ**

knowingly and intentionally traveled in interstate commerce for the purpose of engaging in illicit sexual conduct with another person.

All in violation of Title 18, United States Code, Section 2423(b).

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

    a. On January 24, 2012, FBI S.A. Lee Chartier was contacted by Facebook security via email regarding inappropriate contact between an adult individual and a minor girl. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

    b. Facebook security identified the adult individual from his Facebook profile as Hugo Gonzalez, who listed his city of residence as Kenosha, Wisconsin and his age at 26. Facebook security further identified the juvenile female as C.M. with a listed age on her Facebook profile of 15 and a city of residence as Carpentersville, Illinois. According to Facebook security, Gonzalez had communications with multiple juvenile females on Facebook, but the majority of his communications were with C.M. Gonzalez first began communicating with C.M. on approximately July 22, 2011, but Facebook disabled his account at the end of January, 2012.

    c. Facebook security further provided S.A. Chartier with a copy of a small sampling of the correspondence between C.M. and Hugo Gonzalez through their Facebook accounts

between October 7, 2011 and January 16, 2012. The correspondence was in Spanish, but translated into English by Facebook.

    d.  On October 7, 2011, Gonzalez told C.M., "thank you for allowing me to see you," and professed his love for her. She responded that she loved seeing him and kissing him. On December 21, 2011, Gonzalez wrote to C.M., "it's ok my love I understand that you're scared that if we have sex I'll leave you but you don't have to worry because I love you...." C.M. then replied that she loved Gonzalez and discussed a plan to meet up at the movies the next day but to stay in the car to fool around. On December 23, 2011, Gonzalez and C.M. discussed their meeting, and professed their love. C.M. noted that, "my love you gave me a big hickey."

    e.  On December 28, 2011, Gonzalez wrote to C.M. that he was, "here at the gas station waiting for you to tell me when I can go." Later that date, the two corresponded again, and C.M. thanked him for the gifts including a bra and panties which she would wear the next time she saw him. Gonzalez told C.M., "I love it how little by little you aren't as scared about sex and you allow me to explore your body," and C.M. replied, "I enjoy it it feels good even though it hurts a little ;P and yes my love little by little I am less scared to make love." Gonzalez then told C.M. that he was "dying to make love to you," and noted that, "when you get more horny and have an orgasm you're going to scream more."

    f.  On December 29, 2011, C.M. wrote Gonzalez that she "was so sore," and elaborated that "yes it hurts and my legs do too : my vagina : but I liked it my love it was sexy when you turned me and then got on top of me." Gonzalez replied that he was sorry, and noted that since it was C.M.'s first time, "that's why it hurts you'll see that little by little it won't hurt." On December 30, 2011, Gonzalez discussed what he wanted to do to C.M. when he saw her again: "caress your beautiful breasts and then I would start to touch your vagina and kiss you with passion and you would be so horny and then we would make love."

    h.  On January 16, 2012, C.M. told Gonzalez that her father left, her brother was in the basement and her mother would arrive at 6:00 P.M. Gonzalez replied that he was "already here at the gas station" and would be on his way. Later that date, the two discussed their sexual encounter.

    i.  Using the information from Facebook and through checking with public databases and the Wisconsin Department of Transportation, agents were able to identify Hugo Gonzalez, D.O.B. XX/XX/1983, with an address on Horton Road, Kenosha, Wisconsin, a horse ranch.

    j.  On February 7, 2012, investigators interviewed C.M., whose legal name is C.O., in the presence of her mother at the McHenry County Child Advocacy Center in Woodstock, Illinois. C.O. reported that she resided on Village Creek Drive, in Lake of the Hills, Illinois, and that her date of birth was XX/XX/1998, making her 13 years of age. Investigators advised C.O. of the chat logs they had reviewed from Facebook on December 28, 2011, and C.O. stated that on that date, Gonzalez came to her house, and that they went into her bedroom. C.O. related that she was topless,

3

and Gonzalez reached into her jeans and touched her bare vagina. C.O. was also confronted with the chat logs from January 16, 2012, and C.O. stated that on that date, Gonzalez came over and she stroked his penis until he ejaculated. The following day, agents met with C.O. in her home, and presented her with a booking photo of Gonzalez. C.O. identified his picture, and signed her initials next to it. C.O. further stated that Gonzalez knew of her true age at the beginning of their relationship, and she knew that he resided in Kenosha, Wisconsin.

     k. On February 2, 2012, agents applied for and obtained search warrants for the Facebook accounts operated by C.O. and Hugo Gonzalez. Agents obtained the requested information subsequent to the interview of C.O. on February 7 and 8, 2012. Agents did note that on January 19, 2012, Gonzalez told C.O. that he was fortunate that she gave him those memories of her "first time," and though there are men who like girls with experience, he does not, and would teach her everything he knew. On January 22, 2012, the pair discussed the fact that C.O. took a pregnancy test, and was not pregnant.

     l. On March 6, 2012, agents obtained a complaint and warrant against Gonzalez. On March 7, 2012, agents arrested Gonzalez at the horse ranch. Gonzalez was in possession of 3 cell phones and 2 memory cards, some of which had C.O.'s (non-sexual) photos on them. Gonzalez admitted meeting C.O. in July, 2011, and knowing her true age, but then communicating with her on Facebook and having sexual contact with her.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 30 years and $250,000. The count also carries a mandatory special assessment of $100, at least 5 years of supervised release, and a maximum of lifetime of supervised release.

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF INDICTMENT

9. The government agrees to move to dismiss the indictment at the time of sentencing.

4

## ELEMENTS

10. The parties understand and agree that in order to sustain the charge of Travel in Interstate Commerce to Engage in Illicit Sexual Conduct as set forth in the information, the government must prove each of the following propositions beyond a reasonable doubt:

First, the defendant knowingly and intentionally traveled in interstate commerce;

Second, the defendant did so with the purpose to engage in illicit sexual conduct.

## SENTENCING PROVISIONS

11. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 5. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties

acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

15. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

17. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged is 24 under Sentencing Guidelines Manual § 2G1.3(a)(4).

## Specific Offense Characteristics

18. The parties agree to recommend to the sentencing court that the following adjustments be made to the base offense level:

a. A 2-level increase for use of a computer or interactive computer service, under § 2G1.3(b)(3); and

b. A 2-level increase for commission of a sex act or sexual contact, under § 2G1.3(b)(4).

## Acceptance of Responsibility

19. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

20. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding [any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and] any other matters not specifically addressed by this agreement.

22. The parties agree to recommend a sentence of 57 months of imprisonment.

## Court's Determinations at Sentencing

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

26. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, upon request of the FLU during any period of probation or supervised

8

release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

## Special Assessment

27. The defendant agrees to pay the special assessment in the amount of $ 100 prior to or at the time of sentencing.

## Forfeiture

28. The defendant agrees that all properties listed in the information constitute the proceeds of the offense to which he is pleading guilty, or were used to facilitate such offense. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement.

## DEFENDANT'S WAIVER OF RIGHTS

29. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

  a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

  b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it

9

could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

30. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

10

Case 2:12-cr-00059-JPS   Filed 07/27/12   Page 10 of 15   Document 20

32. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

33. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, and (3) ineffective assistance of counsel.

## Further Civil or Administrative Action

34. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

11

## MISCELLANEOUS MATTERS

35. Pursuant to 18 U.S.C. § 3583(d), the defendant has been advised and understands the court shall order as a mandatory condition of supervised release, that the defendant comply with state sex offender registration requirements. The defendant also has been advised and understands that under the Sex Offender Registration and Notification Act, a federal law, he must register and keep the registration current in each of the following jurisdictions: the location of his residence; the location of his employment; and, if he is a student, the location of his school. Registration will require that the defendant provide information that includes, name, residence address, and the names and addresses of any places at which he will be an employee or a student. The defendant understands that he must update his registration not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to comply with these obligations may subject him to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine and/or imprisonment.

36. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Because defendant is pleading guilty to Travel in Interstate Commerce to Engage in Illicit Sexual Conduct, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and the defendant understands that no one, including the defendant's attorney or the sentencing court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant

12

nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences, including the potential for automatic removal from the United States.

## GENERAL MATTERS

37. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

38. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

39. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

40. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

41. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the

13

defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

42. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 7/27/12

HUGO GONZALES
HUGO GONZALES
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 7/27/12

ROBERTO R. LEDESMA
Attorney for Defendant

For the United States of America:

Date: 7/27/12

JAMES L. SANTELLE
United States Attorney

Date: 7/27/12

BRIAN J. RESLER
Assistant United States Attorney